

RECEIVED

NOV 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT McQUEEN ) ) Plaintiff, ) ) v. ) ) WOODSTREAM CORPORATION, ) ) Defendant. ) | 1:05-cv-02068-RMU |

## PLAINTIFF'S AMENDED COMPLAINT

Now comes plaintiff, Robert McQueen, pro se, and for claims against the Defendant alleges and avers the cause of action set forth below:

### I. PARTIES

1. Plaintiff, Robert McQueen (McQueen") is a private individual having a mailing address at 611 Raleigh Place, S.E., Washington, D.C. 20032.

2. Upon information and belief, Defendant Woodstream Corporation ("Woodstream") is incorporated in the Commonwealth of Pennsylvania and has a mailing address at 69 N. Locus Street, Lititz, PA 17543 and a place of business at such address. Defendant Woodstream also does business in the District of Columbia through various resellers of its products.

### II. JURISDICTION

3) Jurisdiction is properly vested in this Court by virtue of the fact that there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

### III. VENUE

4) Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(b). Defendant transacts business, has regular and established places of business, and/or transacts business at the time the causes of action arose within the District of Columbia.

### IV. FACTS

5) On December 1, 1987, the United States Patent and Trademark Office issued U.S. Patent No. 4,709.503 entitled "Crawling Insect Trap" to Plaintiff McQueen.

6) On March 28, 1989, the United States Patent and Trademark Office issued U.S. Patent No. 4,815.231 entitled "Trap For Small Crawling Pests" to Plaintiff McQueen.

7) Mr. McQueen had invented an enclosed, harborage trap, with disposable glue panels, to catch small crawling insects and mice. No other products on the market at that time used this technology.

8) On February 14, 1992, Plaintiff McQueen, through his representative, disclosed the technology described and claimed in the McQueen patents to Defendant Woodstream, specifically its Vice President, Pest Control Division, J. Hibbard Robertson. Woodstream, through Mr. Robertson, requested several prototype samples so that it could analyze the product and determine whether it wished to assist Mr. McQueen in developing and marketing the products further.

9) McQueen, through his representative, provided the requested samples, along with copies of the patents, on the written condition that Woodstream be honest and professional and protect the confidentiality of the product. It was also provided the technology on the condition that Woodstream not attempt to circumvent Mr.

McQueen with knowledge it gained from exposure to this technology.

10) McQueen offered a licensing opportunity to Woodstream, and renewed it a various times, while checking on the progress of Woodstream in assessing the technology. Woodstream would respond that it was still assessing the technology and had not come to a decision.

11) Sometime in 2003, while reviewing some pest control trade journals. Mr. McQueen spotted a Woodstream product that incorporated all or most of the technology he had disclosed to Woodstream. This was the first time he became aware that Woodstream had utilized knowledge it gained from the disclosure of his technology to Woodstream.

12) Woodstream continued to refuse to take a license and has sold, under at least the Victor® trademark, a number of products which utilize this technology.

## COUNT I - FRAUDULENT MISREPRESENTATION

13) McQueen incorporates by reference paragraphs 1 - 12 set forth above.

14) Defendant Woodstream wilfully made a fraudulent misrepresentation to Mr. McQueen by falsely representing to him the material fact that it was assessing his technology for possible licensing and/or future development with McQueen. It is believed that Woodstream knew at the time that its representation was false and that it had no intention of pursing a license or other joint venture with McQueen. The purpose of this false representation was to obtain samples of Mr. McQueen's technology with the intent to convert them to Woodstream's own use and benefit. As a result, plaintiff has suffered the loss of the profits Woodstream has gained through its conversion of Mr. McQueen's technology.

## COUNT II - BREACH OF CONTRACT

15) McQueen incorporates by reference paragraphs 1 - 12 set forth above.

16) Defendant Woodstream has breached its implied contract with Mr. McQueen to be honest and professional and protect the confidentiality of the product. It also failed to honor its implied contractual agreement of non-circumvention of Mr. McQueen with knowledge it gained from exposure to this technology. Mr. McQueen provided his technology to Defendant Woodstream, in good faith, on the condition that it be honest, professional, confidential and not attempt to circumvent Mr. McQueen with knowledge it gained from disclosure of his technology. Woodstream accepted these conditions by accepting, retaining and assessing the samples Mr. McQueen provided to them. To date, it has never returned the samples. In exchange for these samples, Woodstream had promised Mr. McQueen that it would analyze the product and determine whether it wished to assist Mr. McQueen in developing and marketing the products further. It failed to honor this promise, and instead converted the technology to its own use and benefit by manufacturing and selling products that utilized the technology developed by Mr. McQueen. As a result, plaintiff has suffered the loss of the profits Woodstream has gained through its conversion of Mr. McQueen's technology.

## PRAYER FOR RELIEF

17) Wherefore, Plaintiff McQueen, having asserted claims for relief, prays for judgment against Defendant Woodstream as follows:

a) Such actual damages as Plaintiff McQueen has sustained as a consequence of

Defendant Woodstream's complained of conduct, together with all profits of Defendant Woodstream that are attributable to its complained of conduct and are not taken into account in computing said actual damages;

b) Punitive damages in an amount to be determined by a jury;

c) An award of pre-judgment and post-judgment interest on the amount of damages suffered by Mr. McQueen;

d) A temporary and permanent injunction against Defendant Woodstream from further manufacturing of products that utilize Mr. McQueen's technology; and

e) Such other relief that the Court deems just and equitable.

Respectfully submitted this 14th day of November, as an amendment of the Complaint filed on October 15, 2005.

*[signature]*
Robert McQueen
Plaintiff, Pro se

**JURY TRIAL DEMANDED**