UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT MCQUEEN,                )<br>                                                )<br>           Plaintiff,                        )           Civil Action No.  1:05-CV-2068<br>                                                )<br>v.                                              )           Judge Ricardo M. Urbina<br>                                                )<br>WOODSTREAM CORPORATION, )<br>                                                )<br>           Defendant.                   )<br>_____) | |

### WOODSTREAM'S VERIFIED MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT <u>AND MEMORANDUM IN SUPPORT</u>

Defendant Woodstream Corporation ("Woodstream"), by counsel, hereby moves pursuant to FRCP 12(b)(6) for an order dismissing the First Amended Complaint of Plaintiff Robert McQueen ("McQueen") or, in the alternative, for a more definite statement pursuant to FRCP 12(e).

The grounds for this motion are that the Complaint is barred in its entirety by the applicable statute of limitation, D.C. Code § 12-301; the fraud claim lacks particularity required by FRCP 9(b); the claim of implied contract fails to state a claim upon which relief may be granted, FRCP 12(b)(6); and the implied contract claim is pre-empted by patent law.

In the alternative, assuming dismissal is not granted, the Court should require McQueen to file a more definite statement in respect to certain portions of the Complaint that are materially ambiguous or unclear and which, if more fully detailed, would likely reveal other grounds for dismissal or provide additional support for those grounds presently asserted.

The grounds for this motion are set forth is more detail in the Memorandum below.

A proposed form of order is attached.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   Overview

The First Amended Complaint abandons the federal patent infringement claim asserted by McQueen in his original complaint. In its place, McQueen substitutes two new common law causes of action, for fraudulent misrepresentation and contract implied in law (unjust enrichment), each of which is based upon alleged events and circumstances that occurred <u>fourteen years ago</u>. The new complaint is a transparent attempt by McQueen to recast the patent claim in the form of common law causes of action and, thereby, avoid the Rule 11 dilemma posed by having filed a baseless patent infringement claim without obtaining a pre-filing merits opinion of counsel. [1]

McQueen's amendments should be evaluated with a healthy dose of skepticism, and Woodstream should be protected from trumped-up and stale claims like these.

The new pleading is defective for a host of reasons, shown below, and should be dismissed. In the alternative, the Court should order McQueen to file and serve a more definite statement of his claims, in the respects detailed below, which will have the salutary effect of furnishing adequate notice of his claims and, thereby, make it possible for Woodstream to respond fully to the complaint, including by way of a renewed or supplemented motion to dismiss.

### II.   Background

**The original complaint for patent infringement**

The original complaint contained a single count for patent infringement under federal law. McQueen claimed to be the named inventor of two patents allegedly infringed, U.S. Patent No.

---

[1] *See* Woodstream's Motion for an Early Status Conference and Memorandum in Support, filed August 30, 2006 (Dkt. Entry No. 7), at pp. 4-5 (discussing Federal Circuit authorities requiring pre-complaint investigation and interpretation of claims by competent counsel in order to forestall frivolous patent infringement cases).

4,815,231, Trap for Small Crawling Pests, issued March 28, 1989; and U.S. Patent No. 4,709,503, Crawling Insect Trap, issued December 1, 1987. The McQueen patents expired on October 21, 2005 and March 28, 2006, *see* 35 U.S.C. § 154(c)(1), which means that patent protection has lapsed.

The complaint charged that Woodstream was selling pest traps under the Victor® brand that infringe one or more of the claims of the aforesaid patents. Although the complaint did not identify by name or model number the specific traps accused of infringing, a pre-complaint communication of McQueen's former counsel indicated that he was complaining about three (3) related products. [2] All three of the Woodstream products are mechanical traps used to catch mice. At various times Woodstream included a (separately sold) glue board inside the traps to hold a mouse once caught.

Model No. M312 is the original version of Woodstream's patented TIN CAT® trap that it began marketing in the late 1970s. *See* U.S. Patent No. 4102448 (*Repeating Animal Trap with Side Extension*), filed May 20, 1976 and issued August 1, 1978. The TIN CAT® trap is a small, rectilinear enclosed box made of galvanized metal with an opening large enough to admit a mouse, vent holes and a lid that opens for removal of the catch.

Model No. M308 is a later version of the TIN CAT® trap with a clear plastic opening in the lid to enable the user to see inside the box. Woodstream began selling this version in the late 1980s.

Model No. M408 is the POLY CAT® trap, which is virtually identical to the TIN CAT® traps except is has a high impact plastic lid and has no vent holes. Woodstream began marketing the POLY CAT® trap in 2000. [3]

---

[2]   On September 14, 2005, Thomas L. Peterson, Esq., then counsel for McQueen, informed Steve Polisoto, Vice President, Woodstream, that three Woodstream mousetraps allegedly infringed the McQueen patents, which he identified as Model Nos. M308, M312 and M408.

[3]   The facts set out in the preceding four paragraphs are attested to by Steve Polisoto, Woodstream's Vice President. His Verification is at p. 15 *infra*.

**Woodstream's Motion to Quash Service and for Early Status Conference**

The original complaint was filed on October 21, 2005 but not served for nearly ten months, and then served by certified mail, which was improper. [4] Woodstream responded to the original complaint by filing separate motions (i) to dismiss for insufficiency of service of process; and (ii) for an early pretrial conference.

**The Court's August 30, 2006 minute Orders**

On August 30, 2006, without waiting for a response by McQueen to the Woodstream motions, the Court *sua sponte* issued minute orders denying Woodstream's motions without prejudice, and ordering that:

> In the interests of justice, this case will be held in ABEYANCE for a period of 60 days so that the plaintiff may secure alternative counsel. NEW PLAINTIFF'S COUNSEL SHALL ENTER THEIR APPEARANCE WITH DISPATCH. If the plaintiff is unable to secure counsel, **he must file a notification with the court at the expiration of 60 days** certifying his attempt to secure counsel and his preferences going forward as to this litigation.

**McQueen fails to file the required statement**

The sixty day period expired without McQueen filing the required statement and new counsel has not appeared. Instead, continuing to act *pro se*, McQueen prepared and served a new complaint (First Amended Complaint). McQueen filed a return of service and the new complaint on November 16, 2006 (Dkt. Entry Nos. 10 and 11, respectively).

**First Amended Complaint**

The First Amended Complaint ("Amended Complaint") drops the original patent claim and substitutes two new common law causes of action, for fraudulent misrepresentation (Count I) and contract implied in law (unjust enrichment) (Count II).

---

[4] *See* Woodstream's Motion to Quash Service of Process and Memorandum in Support, filed August 30, 2006 (Dkt. Entry No. 6).

Like the initial complaint, the Amended Complaint alleges the existence of the two (now expired) McQueen patents, and claims that in **1992** McQueen through an unidentified "**representative**" approached Woodstream and "**disclosed the technology described and claimed in the McQueen patents**" by furnishing "prototype samples." (*Id.*, ¶¶ 5-8)  These samples were given by McQueen's representative on the "written condition that Woodstream be honest and professional and protect the confidentiality of the product." (*Id.*, ¶ 9)  Further, Woodstream allegedly "accepted these conditions by accepting, retaining and assessing the samples Mr. McQueen provided to them." (*Id.*, ¶ 16)  At the time Woodstream, through an unidentified person, falsely represented that it was "assessing his technology for possible licensing and/or future development with McQueen" when, according to McQueen's "**belief**" (*id.*, ¶ 14, line 3), its "intent [was to] convert [the samples] to Woodstream's own use and benefit." (*Id.*, ¶ 16)

McQueen claims that "**sometime in 2003**, while reviewing some pest control journals, [he] spotted a Woodstream product that incorporated all or most of the technology he had disclosed to Woodstream" back in 1992. (Amended Complaint, ¶ 11)

The Amended Complaint seeks consequential damages including but not limited to "the loss of profits Woodstream has gained through its conversion of Mr. McQueen's technology" in lieu of taking a license from McQueen, and punitive damages, as well as an injunction. (Complaint, ¶¶ 14, 16 & prayer for relief)

### III.     Argument

A.     **THE AMENDED COMPLAINT SHOULD BE DISMISSED.**

    1.     **The Claims Are Barred By The Statute of Limitations, D.C. Code § 12-301.**

By any measure, the claims asserted by McQueen are completely stale, predicated as they are upon events and circumstances occurring in 1992. These claims put squarely in issue Woodstream's acts and intentions existing fourteen or more years ago, as well as contemporaneous oral and written communications, any of which would be almost impossible to ascertain, locate or reconstruct. Simply put, it would be impractical and unfair to make Woodstream defend claims as old as these, and the law does not require it.

    a.     **The fraudulent misrepresentation claim**

The law of the forum applies, at least at this juncture in the case. *See Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 182 (D.C. 2006); *Nwaoha v. Laserian Aririele Onyeoziri*, 2006 U.S. Dist. LEXIS 84069 at *8 (D.D.C.). The applicable statute of limitations for the fraud claim is the "catch all" provision of D.C. Code § 12-301(8), which limits the time for bringing a fraud action to three (3) years. *See, e.g., King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978). In fraud actions, the so-called "discovery rule"—when the plaintiff knew or should have known of the wrong—is used to determine when the limitations period begins to accrue. *See, e.g., Diamond v. Davis*, 680 A.2d 364 (D.C. 1996).

McQueen should have known of the alleged fraud many years ago. The underlying representation occurred in or about 1992, *see* Complaint, ¶¶ 8-9, 14, and Woodstream began selling the TIN CAT® traps allegedly incorporating the McQueen technology beginning in the late

1970s—a decade or more before either of McQueen's patents. [5] By any measure of reasonable inquiry, McQueen should have discovered the existence Woodstream's product many years before November 16, 2003, which is the bar date under the statute of limitation.[6]

Likewise, even if the focus were McQueen's alleged actual knowledge of the offending product, the claim is still barred. The Amended Complaint alleges that he first had knowledge "sometime in 2003" after reviewing "some pest control trade journals." *Id*., ¶ 11. Unless he were now to come forward in good faith to aver facts showing that he learned of the Woodstream product *after* November 16, 2003, the claim is barred.

### a.    The implied contract claim.

Count II purports to allege a claim of implied-in-law contract, which is not a contract at all but rather a legal duty thrust upon a defendant based upon a theory of unjust enrichment. *See, e.g., Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996); *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973) ("For the purpose of preventing unjust enrichment, however, a quasi-contract—an obligation to pay money to another—will be recognized in appropriate circumstances, even though no intention of the parties to bind themselves contractually can be discerned"), *adopted in H.G. Smithy Co. v. Washington Medical Center*, 374 A.2d 891, 893 (D.C. 1977).

---

[5]    *See* text accompanying note 3 *supra*; *Cevenini v. Archbishop of Washington*, 707 A.2d 768, 770 (D.C. 1996) ("When a motion to dismiss based upon the statute of limitations relies on matters beyond the four corners of the pleadings, as in these cases, … it is treated as a motion for summary judgment") (citations omitted).

[6]    The bar date is three years prior to the filing of the Amended Complaint on November 16, 2006. The Amended Complaint does not "relate back" to the original patent infringement complaint, filed October 21, 2005, because the new claims do not "[arise] out of the conduct, transaction, or occurrence set forth … in the original pleading." FRCP 15(c)(2). (If, however, the Amended Complaint does relate back because they arise from the same transactions, then the new claims are pre-empted by federal patent law. *See* section III.A.4, *infra*.)

The applicable statute of limitations is D.C. Code § 12-301(7), which limits the time for bringing an action on implied contract to three (3) years. In contrast to a fraud claim, however, the statute of limitations for unjust enrichment begins to run *at the time the unjust enrichment occurred*, which is the moment the expected compensation is not paid, not when a party "knew or should have known" of the unjust enrichment. *See, e.g., News World Communications., Inc. v. Thompsen*, 878 A.2d 1218, 1219 (D.C. 2005) ("the statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld").

In this case, therefore, the unjust enrichment occurred, if at all, at the moment Woodstream received a benefit from McQueen without compensating him for its value. Although it is unknown exactly when that occurred, there is no question that it was in or about 1992, many years ago. The implied contract claim is time-barred.

### 2. The Fraud Claim Is Not Pled With Particularity As Required By FRCP 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud …, the circumstances constituting fraud … shall be stated with particularity." The Rule's particularity requirement "ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value." *Semon v. Ledecky (In re United States Office Prods. Sec. Litigation)*, 326 F. Supp. 2d 68, 73 (D.D.C. 2004) (Urbina, J.) This policy applies with special force in this case given that the Complaint is based upon circumstances occurring many years ago.

Fraud claims are subject to strict pleading requirements, *Atraqchi v. GUMC Unified Billing Services.*, 788 A.2d 559,563 (D.C. 2002), *quoting Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977), *cert. denied*, 434 U.S. 1034 (1978) (citations omitted):

> Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. … The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. . . . One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.

*See Lance v. UMW 1974 Pension Trust*, 355 F. Supp. 2d 358, 363-64 (D.D.C. 2005) (same). *See also United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citation omitted) (Rule 9(b) requires "the pleader ... state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud"); *Ellipso, Inc. v. Mann*, 2006 U.S. Dist. LEXIS 23710 at **7-8 (D.D.C.).

Likewise, a general principle of federal pleading that averments of fraud may not be alleged upon "belief" unless the facts are peculiarly within the defendant's knowledge, in which case the allegations "must be accompanied by a statement of facts upon which the belief is based." *Lasky v. Shearson Lehman Brothers Inc.,* 139 F.R.D. 597, 598 (S.D.N.Y. 1991); *see Anderson v. USAA Casualty Insurance Co.*, 221 F.R.D. 250, 253 (D.D.C. 2005) (Urbina, J.).

The Amended Complaint fails to plead <u>with particularity</u> these matters, among others:

1. Who made the allegedly fraudulent misrepresentation?
2. To whom was it made?
3. What method of communication (oral or written) did the speaker use?
4. What was the content of the false representation?
5. When was it made (month, day, year)?
6. What facts, if any, support McQueen's present "belief" (Complaint, ¶ 14) that the representation was intentionally false?
7. What "technology" of McQueen did Woodstream convert to its own use?

9

8. Was the misappropriated technology a patented invention, a trade secret or something else?

9. How is that technology present in Woodstream's products, and which ones?

Requiring specific allegations as to each of these matters is a matter of fundamental fairness, given that the Amended Complaint is both a transparent attempt to plead around the original patent claim and is based upon extremely old contacts and communications. Indeed, there is every reason to believe that requiring more details about these matters would lend further support to Woodstream's contention that the new claims are defective on their face and should be dismissed.

### 2. The Allegations Of Implied Contract Fail To State A Claim Upon Which Relief May Be Granted.

#### a. The Amended Complaint alleges misuse of "technology" that was publicly disclosed in 1992, which means that there was no reasonable expectation of confidentiality.

McQueen alleges that in February 1992 his representative "disclosed [to Woodstream] the technology described and claimed in the McQueen patents." (Amended Complaint, ¶ 8) The representative furnished samples of the technology on the condition that Woodstream protect their confidentiality, *id.*, ¶ 9, which Woodstream agreed to do by accepting, retaining and assessing the samples. (*Id.*, ¶ 16)

If the gist of the implied contract claim is that Woodstream owed McQueen a duty of confidentiality, the claim fails because there could not have been a reasonable expectation of confidentiality or secrecy. Patents are public documents and their contents are freely and openly available to all. The Amended Complaint alleges that Woodstream retained and converted to its own use the technology behind certain prototype samples *embodying the subject matter of the*

10

*McQueen patents.* (*See* Complaint, ¶¶ 8-9, 16) By definition, a device that embodies the claims of a patent is not confidential,[7] which bars a claim of violation of an implied contract.

Of course, if the gist of the claim is that Woodstream infringed McQueen's patent, then the claim also fails. An unjust enrichment claim cannot be predicated upon infringement of a patent because the sole remedy for infringement is a patent claim, which McQueen has abandoned and otherwise would be pre-empted by patent law. *See* section III.A.4 *infra* & cases cited.

### b.    There is no allegation of lack of an adequate legal remedy.

"An unjust enrichment action … involves a quasi-contract, a contract implied in law." *Ellipso, Inc. v. Mann*, 2006 U.S. Dist. LEXIS 79827 at *10 (D.D.C.). "The doctrine of unjust enrichment has at all times been fundamentally *equitable* in nature notwithstanding its long association with the law of contracts." *BCCI Holdings (Lux.), S.A. v. Khalil*, 56 F. Supp. 2d 1, 64 (D.D.C. 1999); *see 4934, Inc. v. District of Columbia Dep't of Employment Services*, 605 A.2d 50, 55 (D.C. 1992) ("Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another"). An equitable remedy is not available when there is an adequate legal remedy. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, … the absence of an adequate remedy at law").

Here, the same set of facts underlying McQueen's tort claim also underlie his claim of implied contract. *Compare* Amended Complaint, ¶ 13 *with id.*, ¶ 15 (both counts incorporate common allegations). There is no allegation by McQueen that he lacks an adequate legal remedy.

---

[7]    *See Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1049-52 (Fed. Cir. 2001) (publication of patent bars claim for misappropriation of trade secrets even if information obtained through confidential relationship); *Stutz Motor Car of America, Inc. v. Reebok Intern'l, Ltd.*, 909 F. Supp. 1353 (C.D. Cal. 1995) (granting judgment for defendant on unfair competition and other state law claims involving alleged misappropriation of trade secret; "Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished").

Accordingly, because an adequate remedy exists at law, his claim implied contract fails to state a claim. *See American Honda Motor Co. v. Motorcycle Information. Network, Inc.,* 390 F. Supp. 2d 1170, 1178 & n.34 (M.D. Fla. 2006).

    **4.**    **The Implied Contract Claim Is Pre-empted By Federal Patent Law.**

McQueen's implied contract claim alleges that Woodstream retained and converted to its own use the technology behind certain prototype samples **embodying the subject matter of the McQueen patents**. (*See* Complaint, ¶¶ 8-9, 16) This is exactly the same as saying that Woodstream infringed the patents. The implied contract claim, therefore, is an attempt to enforce intellectual property rights during a period when the McQueen patents were in force. The claim is clearly pre-empted by federal patent law. *See, e.g.*, *Malik v. Lynk, Inc.*, 1999 U.S. Dist. LEXIS 14811 at *12 (D. Kan.) (pre-emption found; "Plaintiff's conversion claim is based on defendant's use of plaintiff's patent, conduct which is clearly governed by patent law").

McQueen has not pled that he provided any "incremental benefit" to Woodstream over and above the benefit the general public received when McQueen published his technology in the patents, which is fatal to his claim. *See Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1379-80 (Fed. Cir. 2005). Moreover, McQueen seeks profits that Woodstream allegedly gained by using the technology but not paying for a license, which a royalty-like remedy. *See* Complaint, ¶ 16 & prayer for relief; 35 U.S.C.§ 284 (allowing recovery of compensatory damages but no less than a reasonable royalty. In short, McQueen seeks a damage recovery that is pre-empted by federal patent law. *See Ultra-Precision Mfg. v. Ford Motor Co.*, *supra*, 411 F.3d at 1373 ("In the absence of an incremental benefit conferred, any attempt to obtain a patent-like royalty for the making, using, or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted"); *Waner v. Ford Motor Co.*, 331 F.3d 851 (Fed. Cir. 2003), *cert. denied*, 540 U.S.

1105 (2004) (affirming dismissal of unjust enrichment claim alleging defendant's use of plaintiff's invention commercially without paying or permission). Indeed, if McQueen's claim were allowed, he would be able to obtain a perpetual patent-like royalty in lieu of bringing an infringement action and despite the expiration of his patents—a result that squarely conflicts with patent law. McQueen's implied contract claim is pre-empted.

**B.     IN THE ALTERNATIVE, WOODSTREAM IS ENTITLED TO A MORE DEFINITE STATEMENT.**

In the alternative, assuming *arguendo* that the Amended Complaint is not dismissed outright, the Court should require McQueen to file a more definite statement in respect to certain portions of the Amended Complaint that are ambiguous or unclear and which, if more fully detailed, would likely reveal other grounds for dismissal or provide additional support for those grounds presently asserted. *Cf. Hilska v. Jones*, 217 F.R.D. 16, 21-22 (D.D.C. 2003) (Urbina, J).

Specifically, McQueen should be required to furnish a statement of these details in order to cure the material vagueness or ambiguity of his new allegations:

1. Was the technology that Woodstream allegedly converted disclosed in either or both of the McQueen patents and, if not, how did it differ? (*See* Complaint, ¶¶ 8-9)

2. Who was McQueen's "representative" who communicate with Woodstream in 1992? (*See id.*)

3. In what document(s) does the "written condition" of confidentiality presented to Woodstream appear? (*See id.*, ¶ 9)

4. When in 2003 did McQueen obtain actual knowledge of Woodstream's product incorporating all or most of the technology he had disclosed to Woodstream? (*See id.*, ¶ 11)

5. In what trade journal(s) did McQueen "spot" the product? (*See id.*)

6. What product did McQueen see in the journal? (*See id.*)

7. How is McQueen's technology present in Woodstream's products, and which ones? (*See* Complaint, ¶ 12)

## IV. Conclusion

WHEREFORE, for the reasons and under the authorities shown, Woodstream requests that the Court dismiss the Amended Complaint or, in the alternative, require McQueen to furnish a more definite statement.

        Respectfully submitted,

        / s /
        _____
        Philip L. O'Neill
         (D.C. Bar No. 941823)
        Harvey B. Jacobson, Jr.
         (D.C. Bar No. 54577)
        JACOBSON HOLMAN PLLC
        400 Seventh St., N.W.
        Washington, D.C. 20004-2218
        Tel.: (202) 626-4681
        Fax: (202) 393-5350

        Attorneys for Defendant
        Woodstream Corporation

## **VERIFICATION**

I am Vice President of Defendant Woodstream Corp. I hereby declare under penalty of perjury under the laws of the United States that the facts recited in footnotes 2 and 3 and accompanying text of the Memorandum hereinabove are true and correct to the best of my knowledge and belief.

/ s /
_____
Steve Polisoto

## CERTIFICATE OF SERVICE

      I hereby certify that on this 4th day of December, 2006, I caused a true and correct copy of the foregoing WOODSTREAM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT AND MEMORANDUM IN SUPPORT to be served by first class U.S. mail, postage prepaid, upon:

      Robert McQueen
      c/o Robin Services, Inc.
      611 Raleigh Street, S.E.
      1st Floor
      Washington, D.C. 20032

/ s /
_____
Philip L. O'Neill

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT MCQUEEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  1:05-CV-2068 |
| | ) | |
| v. | ) | Judge Ricardo M. Urbina |
| | ) | |
| WOODSTREAM CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Upon consideration of Defendant Woodstream Corporation's Motion to Dismiss or, in the Alternative, for More Definite Statement and Memorandum in Support, and the opposition of Plaintiff Robert McQueen thereto, and all other matters of record, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that the First Amended Complaint is hereby dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE
