UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT MCQUEEN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:05-CV-2068 |
| ) | |
| v. ) | Judge Ricardo M. Urbina |
| ) | |
| WOODSTREAM CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## WOODSTREAM'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Woodstream Corporation ("Woodstream"), by counsel, hereby replies to the Opposition of Plaintiff Robert McQueen ("McQueen") to Woodstream's motion to dismiss or, in the alternative, for a more definite statement, and respectfully shows the Court that:

1.  McQueen's Opposition brief is couched in legal jargon [1] but never comes to grips, legally or factually, with the substance of Woodstream's several arguments.

### The Fraud Claim

2.  Woodstream argues that the fraudulent misrepresentation claim is time-barred and/or insufficiently particularized. The premise of both arguments is that a litigant who claims fraud based upon events and circumstances occurring fourteen years ago ought to bear a heavy burden to

---

[1] McQueen has informed the Court that he is proceeding *pro se*. It is fairly obvious, however, that a lawyer ghostwrote all or most of the Opposition. McQueen is therefore obtaining legal assistance in this case albeit from someone who has not entered an appearance. The upshot is that inasmuch as McQueen is capable of acting like a normal litigant when he wants to, he should be held to the same standards that govern a represented party. We ask the Court to bear this in mind if McQueen continues in the future to violate the Standing Order or the federal rules of civil procedure—such as by failing, as he recently did, to file a timely motion for an extension of time to oppose Woodstream's motion.

plead and/or prove specific facts that demonstrate clearly why the claim in not stale. This is especially warranted when, as here, the complaint is an obvious effort to plead around a defective patent infringement claim. Nowhere does McQueen meet his burden.

3.  Woodstream showed in its opening brief that Woodstream has been selling mousetraps allegedly incorporating McQueen's technology since the late 1970s—many years before the alleged disclosure by his sales agent. McQueen does not counter this with any *specific facts*, as required,[2] but improperly rests upon the allegations of his complaint. See FRCP 56(e) ("an adverse party may not rest upon mere allegations [of its] pleading ... but ... must set forth specific facts showing that there is a genuine issue for trial"). That is, he merely repeats on brief his complaint allegation that he first learned of Woodstream's use of his technology "sometime" in 2003. McQueen fails to explain how or why he failed during the preceding ten years to make that discovery, or even to document with more precision the actual time in 2003 when he learned of Woodstream's products (information uniquely within his knowledge). As it stands, the current complaint is time-barred.[3]

4.  Almost certainly it will be impossible for Woodstream to locate witnesses who have a reliable memory of events occurring so long ago (the officer alleged to have committed the fraud has long since left the company) or to find relevant documents (the company does not keep

---

[2]  Woodstream's offer of evidence converts the statute of limitations portion of its motion to dismiss into one for summary judgment. See (*Cevenini v. Archbishop of Washington*, 707 A.2d 768, 770 (D.C. 1996) ("When a motion to dismiss based upon the statute of limitations relies on matters beyond the four corners of the pleadings, as in these cases, ... it is treated as a motion for summary judgment") (citations omitted).

[3]  McQueen argues that his new complaint "relates back" (FRCP 15(c)(2)) to the original complaint because it is based on the same conduct set forth in the prior patent infringement complaint. If so, then the new complaint is pre-empted by the patent laws. The point is, McQueen cannot have it both ways: either there is no relation back because the new complaint is founded upon different conduct, or there is relation back but the new complaint is pre-empted.

documents this old). Indeed, McQueen has not even identified the unnamed "representative" who communicated with Woodstream (McQueen himself did not participate in the 1992 oral communications, so the identity and memory of this individual is key to his claims). Nor has McQueen produced the putative "accompanying letter" that the representative allegedly presented when furnishing the prototypes. At the very least, a particularized statement of these and other matters should be required before Woodstream is obligated to answer a fraud complaint based upon extremely old events like these.

### The Implied Contract Claim

5.  McQueen effectively concedes that the implied contract (unjust enrichment) claim is barred by the statute of limitations. McQueen never discusses the case authorities cited by Woodstream that hold that the statute begins to run when the enrichment occurs—here, in 1992 when the alleged technology was disclosed to Woodstream. The claim should be dismissed.

6.  Woodstream's opening brief also argued that there can be no misuse of technical information for which there was no reasonable expectation of confidentiality. McQueen attempts to counter this by *rewriting* his complaint: whereas the complaint alleges that he "disclosed the technology described and claimed in the *patents*" (*id.* at ¶ 8) by furnishing prototypes that embodied the subject matter claimed in those patents (*id.* at ¶¶ 8-9, 16), McQueen now says on brief (Opp. at 2-3, 7-8) that some or all of the information was not contained in the patents.[4] This is sophistry: if Woodstream's use of the "technology" infringed his patents, as McQueen originally claimed and as his current complaint alleges, then the publication of those patents bars a claim of

---

[4] Actually, McQueen says a couple of different things: first he says that the technology was "**both** *within* the patent and *outside* of the patent" (Opp. at 2)—whatever that means—and then he says that the technology was not contained in the patent, *i.e.*, that "[h]e does not *believe* that the defendant learned this technology from a review of the patent." (Opp. at 8) This ambiguity is fatal to his position or, at the very least, must be cured by a more definite statement.

3

unjust enrichment. And it is also improper: the cases are legion that dismissal cannot be avoided by statements in a brief that contradict the allegations of a complaint.

7.    At bottom, McQueen's amended complaint is a transparent effort to plead around the now-withdrawn patent infringement claim by asserting common law theories of liability. Because the amended complaint merely alleges misuse of patented technology, and seeks the patent-like remedy akin to a royalty, the implied contract claim is pre-empted by the federal patent laws.[5]

### Conclusion

The Court should dismiss the First Amended Complaint or, in the alternative, require McQueen to furnish a more definite statement.

Respectfully submitted,

/ s /
_____
Philip L. O'Neill
  (D.C. Bar No. 941823)
Harvey B. Jacobson, Jr.
  (D.C. Bar No. 54577)
JACOBSON HOLMAN PLLC
400 Seventh St., N.W.
Washington, D.C. 20004-2218
Tel.: (202) 626-4681
Fax: (202) 393-5350

Attorneys for Defendant
Woodstream Corporation

---

[5]    McQueen suggests that Woodstream's facts are "inaccurate" (Opp. n. 1) because the later of his two patents (No. 4,815,231) has not expired. The suggestion is erroneous: McQueen fails to appreciate that the later patent was a continuation of the earlier one, which means that the twenty-year period of validity began to run from 1985, and thus the patent in fact expired in 2005.