THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT MCQUEEN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 05-2068 |
| | : | |
| v. | : | |
| | : | Document No.: 13 |
| WOODSTREAM CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT REGARDING THE
PLAINTIFF'S FRAUD CLAIM; GRANTING THE DEFENDANT'S MOTION TO DISMISS THE
PLAINTIFF'S BREACH OF CONTRACT CLAIM

## I. INTRODUCTION

Pending before the court is the preliminary question, raised *sua sponte*, of whether the District of Columbia is an appropriate venue for this case. Also pending is the defendant's motion to dismiss the plaintiff's amended complaint alleging breach of implied contract and fraudulent misrepresentation.

Because the defendant, a Pennsylvania company, initiated numerous telephonic conversations with the plaintiff in the District of Columbia, this district has substantial contacts with the plaintiff's cause of action, rendering it an appropriate venue for this matter.

The court grants the motion to dismiss the plaintiff's breach of contract claim, as the statute of limitations bars it. The court denies the motion to dismiss the plaintiff's fraud claim, which is not barred by the statute of limitations. And, finally, as the plaintiff fails to plead his fraud claim with adequate specificity, the court grants him leave to amend it.

## II.   BACKGROUND

### A.   Factual History

The plaintiff, Robert McQueen, is the majority owner and President of Robin Services, Inc., a corporation based in Washington, D.C. that develops and markets products for catching insects and pests. Pl.'s Brief on Venue ("Pl.'s Brief"), Ex. 3 ("Jenkins Aff."). The defendant, Woodstream Corporation, is a pest control company based in Lititz, Pennsylvania. *Id.* at 2.

Shortly before January 21, 1992, employees for the defendant initiated a series of contacts with the plaintiff's company to pursue a potential joint business venture. *Id.* at 1-2. First, an employee of the defendant's holding company called the plaintiff's representative in his Washington, D.C. office to discuss potential business opportunities between the defendant and the plaintiff's company. *Id.* Soon after, a Woodstream vice president called the plaintiff's representative, again at his Washington, D.C. office, to discuss the plaintiff's product and to invite the representative to Woodstream's Pennsylvania office for a demonstration. *Id.* at 2. On January 21, 1992, and again on February 14, 1992, the vice president sent follow-up letters to the plaintiff's representative at his Washington, D.C. office to confirm various aspects of the ongoing negotiations. Pl.'s Brief, Ex. 1 & 2. In furtherance of this potential venture – and at the invitation of the defendant – a representative of the plaintiff's company traveled to the defendant's Pennsylvania office to demonstrate the plaintiff's product. *Id.* at 2. The representative later sent samples of the product to the office for evaluation. *Id.*

Communications between the parties came to an end later that year, after the defendant repeatedly informed the plaintiff that no decision had been made and that it was still assessing the product. Am. Compl. ¶ 10. The plaintiff describes his product as "an enclosed, harborage

trap, with disposable glue panels, to catch small crawling insects and mice." *Id.* ¶ 7. The plaintiff allegedly learned that the defendant was selling a product that incorporated the plaintiff's technology "sometime in 2003" when reading an advertisement in the August 2003 edition of *Pest Control Technology* magazine. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 3; Pl.'s Supp. Statement in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Supp."), Ex. 4.

### B. Procedural History

On October 21, 2005, the plaintiff filed a complaint alleging that the defendant stole his technology.[1] Compl. ¶¶ 12-14. On November 16, 2006, the plaintiff filed an amended complaint that abandoned the patent infringement count and contained common law causes of action for fraudulent misrepresentation and breach of implied contract. Am. Compl. ¶¶ 13-16.

Responding to the plaintiff's amended complaint, the defendant filed a motion to dismiss arguing, *inter alia*, that the applicable statutes of limitations bar the plaintiff's claims. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 6-7. The defendant also moved for a more definite statement with respect to "certain portions of the Amended Complaint that are ambiguous or unclear." *Id.* at 13.

Skeptical that proper venue lay in this district, the court, *sua sponte*, ordered the parties to submit supplemental briefings on venue. Mem. Order (Mar. 5, 2007) at 3. The court now turns to its analysis of venue and to the defendant's pending motion to dismiss.

---

[1] The plaintiff asserts that he held U.S. Patent Nos. 4,709,503 and 4,815,231 for this technology.

### III.  ANALYSIS

#### A.  Venue

##### 1.  Legal Standard for Venue under 28 U.S.C. § 1391(a)

When federal jurisdiction is premised solely on diversity, 28 U.S.C. § 1391(a) controls venue, establishing that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Section 1391(a)(2) "explicitly recognizes that venue may be proper in more than one district." *Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1, 4 (D.D.C. 2004) (internal citation omitted); *see also Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (noting that courts "no longer ask which district among the two or more potential forums is the 'best' venue") (internal citation omitted). Therefore, the court must evaluate "'whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.'" *FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006) (quoting *Setco*, 19 F.3d at 1281).

In determining whether the district's connections to the claim are sufficiently substantial to support venue under the statute, the court assumes that the plaintiff's allegations are true. *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 8 (D.D.C. 2003). "A court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'" *Lichtenstein*, 411 F. Supp.

2d at 11 (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (internal citation omitted)). Specifically, the substantial connections standard set forth in Section 1391(a)(2) "'may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'" *Lichtenstein*, 441 F. Supp. 2d at 11 (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153-54 (2d Cir. 2001)).

### 2. Venue in the District of Columbia is Proper

The defendant asserts that venue in the District of Columbia is improper because a substantial part of the events giving rise to this action took place in Pennsylvania.[2] Def.'s Brief on Venue ("Def.'s Brief") at 1-3. Specifically, the defendant contends that the plaintiff and his agent "solicited a commercial relationship with Woodstream in Pennsylvania," and in doing so communicated on multiple occasions with the defendant in that state. *Id.* at 3. Furthermore, the defendant argues, the plaintiff's agent visited the defendant's Pennsylvania offices and sent samples of his product into the state. *Id.* Also, the defendant evaluated and tested the plaintiff's product in Pennsylvania and "developed and marketed competing products in and from Pennsylvania that incorporated McQueen's proprietary information." *Id.*

The plaintiff counters that venue is proper in this court because a substantial part of the events giving rise to the claim occurred in the District of Columbia. Specifically, the plaintiff states that he "at all times has transacted all of his business from the District of Columbia at the

---

2  Woodstream argues that events giving rise to the claim occurred in substantial part in Pennsylvania but does not argue why they may not have also occurred in substantial part in the District of Columbia, Def.'s Brief on Venue at 3, even though the venue statute "explicitly recognizes that venue may be proper in more than one district," *Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1, 4 (D.D.C. 2004).

clear invitation of defendant." Pl.'s Brief at 3.

The plaintiff has the better of the two arguments. As noted previously, venue is appropriate if there is substantial contact: (1) in the form of communications transmitted to or from the district in which the cause of action was filed; and (2) these communications have a sufficient relationship with the cause of action. *Lichtenstein*, 441 F. Supp. 2d at 11. With regard to the first inquiry, substantial contacts existed in the form of communications transmitted to and from the District of Columbia. As detailed earlier, the defendant's agents made numerous telephone calls to the plaintiff's agent in the District of Columbia. Pl.'s Brief, Ex. 1 & 2. In addition, the defendant received letters addressed to his D.C. office from the plaintiff. *Id.* These actions can only be characterized as communications; thus, they categorically satisfy the first prong.

As to the second prong, because the communications to and from the District of Columbia precipitated the parties' current discord, they have a sufficient relationship with the cause of action. *See Lichtenstein*, 441 F. Supp. 2d at 11. The communications between the parties transmitted to and from the District of Columbia were critical to the defendant's alleged fraudulent undertaking. The plaintiff claims that the defendant "falsely represented to him the material fact that it was assessing his technology for possible licensing and/or future development" with his company, while having "no intention of pursuing a license or other joint venture." Am. Compl. ¶ 14. The plaintiff also claims that the defendant's "purpose of this false representation was to obtain the samples of Mr. McQueen's technology with the intent to convert them[.]" *Id.*

The defendant's phone calls to the plaintiff's representative discussing the plaintiff's

product and inviting the representative to the defendant's office for a demonstration were crucial in pursuing the fraudulent misrepresentation. *See Lichtenstein*, 441 F. Supp. 2d at 12 (finding that telephone conversations inducing reliance "were a significant part of the sequence of events underlying" a fraud claim). Moreover, the February 14, 1992, letter sent by Woodstream's vice president to the plaintiff's representative requesting a dozen samples of the plaintiff's product had not only a "sufficient relationship . . . [with] the cause of action" but furthered that fraudulent endeavor. *U.S. Titan*, 241 F.3d at 154. Quite evidently, the communications made to and from the District of Columbia have a sufficient relationship with this cause of action.

### B. Statute of Limitations

#### 1. Legal Standard for Rule 12(b)(6) and Statute of Limitations

A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).[3] Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.

---

[3] The defendant believes that its "offer of evidence converts the statute of limitations portion of its motion to dismiss into one for summary judgment." Pl.'s Reply at n.2. When a party attaches materials outside the pleadings to a motion to dismiss, the motion may be converted into a motion for summary judgment. FED. R. CIV. P. 12(c). This decision lies in the court's discretion. *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994); *Wiley v. Hughes Capital Corp.*, 746 F. Supp. 1264, 1275 (D.N.J. 1990); *Kelley ex. rel. Mich. NRC v. Arco Indus.*, 721 F. Supp. 873, 877 (W.D. Mich. 1989). That discretion is not warranted when there has been little or no discovery conducted by the parties. *Brug v. The Enstar Group, Inc.*, 755 F. Supp. 1247, 1251 (D. Del. 1991); *Ospina v. Dep't of Corrs.*, 749 F. Supp. 572, 574 (D. Del. 1990); *Kelley*, 721 F. Supp. at 877-78. The defendant filed this motion less than a month after the plaintiff filed the amended complaint, and the parties have not yet conducted discovery. It would, therefore, be premature to consider this motion to dismiss as a motion for summary judgment given the factual nature of some of the issues raised in defendant's motion.

*Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time barred. *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985). The complaint is construed liberally in the plaintiff's favor, and the plaintiff is given the benefit of all inferences that can be derived from the facts alleged. *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although what constitutes the accrual of a cause of action is a question of law, the specific moment when accrual occurs is usually a jury question. *Diamond v. Davis*, 680 A.2d 364, 370 (D.C. 1996). Accordingly, if "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

### 2. The Fraudulent Misrepresentation Claim is Not Barred by the Statute of Limitations

The defendant claims that the fraudulent misrepresentation claim is barred by the statute of limitations. The plaintiff counters that his amended complaint relates back to his original complaint, which fell within the statute of limitations because he filed it within three years after discovering the fraud. He is correct. Because the discovery rule is applicable and the amended complaint relates back to the date of the original complaint, the fraudulent misrepresentation claim is not time barred.

#### a. Relation-Back Doctrine

The date of the plaintiff's amended complaint relates back to the date of his original complaint. Rule 15(c) allows a plaintiff to amend his complaint to add a claim or defense when that claim or defense "arose out of the conduct, transaction, or occurrence" set forth in the

original pleading. FED. R. CIV. P. 15(c); *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (discussing the relation-back doctrine). Typically, amendments that build on previously alleged facts will relate back. *Hicks*, 283 F.3d at 388. But "those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *Id.* Courts inquire into whether the opposing party has been put on notice regarding the claim. 6A FED. PRAC. & PROC. § 1497 (2d ed. 1987). If the alteration is "so substantial that it cannot be said that defendant was given adequate notice . . . then the amendment will not relate back and will be time barred if the limitations period has expired." *Id.*

Here, both the original and amended complaints arose out of the same transaction and occurrence, that is, the alleged incorporation of the plaintiff's technology into the defendant's manufactured products.[4] Am. Compl. 11; Compl. 10; *see Hicks*, 283 F.3d at 388 (applying "transaction and occurrence" test). Also, the plaintiff's amended complaint builds on the alleged facts of his original complaint. *Compare* Am. Compl. 5-11 (alleging, with specificity as to persons, time and place, the disclosure of the plaintiff's technology to the defendant) *with* Compl. 6-10 (alleging, in general terms, disclosure of technology).

Therefore, the plaintiff's amended complaint relates back to October 21, 2005, the filing date of the plaintiff's original complaint. It is time barred, therefore, only if October 21, 2005 is three years after the statute of limitations began running, a question to which the court now turns.

---

[4] The defendant complains that the plaintiff cannot "have it both ways," arguing that if the amended complaint relates back to the original, then the implied contract claim is preempted by patent law. Def.'s Reply at n.3. The court's dismissal of the plaintiff's contract claim renders this issue moot.

**b.     Discovery Rule**

The plaintiff asserts that the statute of limitations begins to run upon discovery of the illegal conduct. Pl.'s Opp'n at 5. The defendant disagrees, arguing that the rule does not apply because the plaintiff "should have known of the alleged fraud many years ago." Def.'s Mot. at 6.

In fact, when there has been no "actual notice," the statute of limitations begins to run the moment that a "reasonable investigation" by the plaintiff would have alerted the plaintiff to a cause of action. *Diamond*, 680 A.2d at 372 (starting the clock when a reasonable investigation by the plaintiff into her affairs "would have led to actual notice"). To determine what constitutes a reasonable investigation, the courts employ "a highly factual analysis." *Id.* (omitting internal quotations). In some cases "the relevant facts may be such that it may be reasonable to conduct no investigation at all," while in other cases, "the only reasonable investigation under the circumstances would have been an exhaustive one." *Id.* Among other factors, the court should consider "the conduct and misrepresentations of the defendant, and the reasonableness of the plaintiff's reliance on the defendant's conduct and misrepresentations." *Id.* In the end, the defendant bears the burden of proving that the plaintiff should have but did not conduct a reasonable inquiry. *Id.* at 377; *see also Kowal*, 16 F.3d 1271 at 1276 (declaring that the plaintiff receives the benefit of all inferences that can be derived from the facts alleged).

Under the procedural posture of this case, the defendant must demonstrate that the plaintiff has failed to conduct a necessary, reasonable inquiry. *Diamond*, 680 A.2d at 377 (observing that the defendant bears the burden of evidence). But the defendant merely states that the plaintiff "failed to explain how or why he failed during the preceding ten years to make [a]

discovery."[5]  Def.'s Reply at 2.  The defendant does not explain why the plaintiff's discovery through a trade journal in 2003 of the alleged misappropriation occurred past the deadline of a reasonable inquiry – or why a reasonable inquiry was warranted in the first place.

   A reasonable person could disagree on the date that the plaintiff's cause of action accrued.  The plaintiff and the defendant interacted over a series of mutually beneficial preliminary encounters involving discussion, presentation, and transfer of prototypes of the plaintiff's product to the defendant.  Am. Compl. ¶ 8-10.  The plaintiff's representative disclosed the product to the defendant's Vice President of Pest Control.  Id. ¶ 8.  The plaintiff also conveyed offers of licensing.  Id. ¶ 10.  And the defendant concluded the relationship by indicating that it was assessing the technology but had not yet reached a decision.  Id.  These business encounters, though never consummated with a formal, written contract, comprise evidence of a non-adversarial relationship – hardly the sort of circumstance requiring the plaintiff to immediately initiate an investigation into the defendant's consumer products catalogue to uncover alleged misappropriations of technology.  See id. at 378 (determining that in non-adversarial relationships a lowered level of reasonable diligence is permitted).

   Because the defendant has not demonstrated that the plaintiff knew or should have known about his cause of action prior to "sometime in 2003," Pl.'s Opp'n at 5, the court denies the defendant's motion to dismiss the fraud claim as time barred.  Though not time barred, should the fraud claim be dismissed for failure to state with particularity the circumstances constituting fraud?  It should not, as is explained below.

---

[5]   The defendant may reassert this claim if through discovery it unearths evidence to support the proposition.

3.  **The Heightened Pleading Standard for Fraud Claims Does Not Warrant Dismissal of the Plaintiff's Fraud Claim**

    a.  **Legal Standard for a Rule 9(b) Motion to Dismiss**

Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. *Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992); *see also Kowal*, 16 F.3d at 1279 n.3 (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)); *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (same).

Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place and content of the false misrepresentations; the misrepresented fact; and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). In other words, Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd*, 498 U.S. 941 (1990) (requiring the pleader to provide the equivalent of a "first paragraph of any newspaper story"). Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information

and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim. *Kowal*, 16 F.3d at 1279 n.3.

That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise and direct. *Id.* at 1278 (citing *Cannon*, 642 F.2d at 1385); FED. R. CIV. P. 8. Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked. *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). Additionally, while the court must accept as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. *Kowal*, 16 F.3d at 1278 (citing *Wool v. Tandem*, 818 F.2d 1433, 1439 (9th Cir. 1987)); *Shields*, 1992 WL 88004, at *7; *see also One-O-One Enters., Inc. v. Caruso*, 668 F. Supp. 693, 697-99 (D.D.C. 1987), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988) (explaining that the pleader must allege with particularity the alleged fraud to survive a Rule 9(b) motion).

   **b.** **Legal Standard for a Rule 12(e) Motion For More Definite Statement**

Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend. *See Firestone*, 76 F.3d at 1209 (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). Accordingly, the court should reserve dismissal with prejudice for "extreme situations where the pleader has had

the opportunity to cure any deficiencies but either has not or cannot do so." *Shields*, 1992 WL 88004, at *5.

Rule 12(e) provides defendants with a remedy for inadequate complaints that fail to meet the minimum pleading standard set forth in Rule 8(a). FED. R. CIV. P. 8(a), 12(e); *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 823 (4th Cir. 1973) (stating that Rule 12(e) must be read in conjunction with Rule 8(a)). Thus, "when a defendant is unclear about the meaning of a particular allegation in the complaint, the proper course of action is not to move to dismiss but to move for a more definite statement." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 725 (7th Cir. 1986) (citing *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 189 (1954)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (recognizing that "[i]f a pleading fails to specify the allegation in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e)").

Consistent with Rule 8(a)'s liberal pleading requirements, courts are reluctant to compel a more definite statement pursuant to Rule 12(e). *Latch String, Inc. v. The Rouse Co.*, 1977 WL 1346, at *1 (D.D.C. Jan. 4, 1977) (citing *United States v. Ga. Power Co.*, 301 F. Supp. 538, 543-44 (N.D. Ga. 1969)). To prevent Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite statement where the information sought may be obtained in discovery. *Id.* at *1 (citing *Stromillo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 54 F.R.D. 396, 397 (E.D.N.Y. 1971); *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)) (determining that the information sought was an issue for discovery rather than the pleadings). Moreover, "[w]hen the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court

should deny a motion for a more definite statement and require the defendant to bring the case to issue by filing a response within the time provided by the rules." *Hodgson*, 482 F.2d at 824 (citing *Mitchell*, 269 F.2d at 132).

Mindful that all litigants are entitled to proper notice pleading under Rule 8(a), however, the court will grant relief pursuant to Rule 12(e) where the pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a respons[e]." FED. R. CIV. P. 12(e); *see also Ekberg v. Pennington*, 2002 WL 1611641, at *1 (E.D. La. July 19, 2002) (granting a Rule 12(e) motion where "the plaintiff's complaint pleads nothing but conclusions and provides no guidance to the defendants as to how to respond"); *Bower v. Weisman*, 639 F. Supp. 532, 538 (S.D.N.Y. 1986) (granting a Rule 12(e) motion because the plaintiff's claims lacked clarity and the defendant therefore could not effectively respond to the complaint); *Saad v. Burns Int'l Sec. Servs., Inc.*, 456 F. Supp. 33, 36 (D.D.C. 1978) (finding that mere allegations do not suffice to state a claim and ordering the plaintiff to file a more definite statement).

### c.  The Court Grants the Plaintiff Leave to Amend His Fraud Pleading to Provide a More Definite Statement

The plaintiff fails to plead with particularity several critical elements necessary to establish fraudulent misrepresentation. The plaintiff alleges only that he "spotted a Woodstream product that incorporated all or most of the technology he had disclosed to Woodstream." Am. Compl. ¶ 11. The defendant, expressing confusion, responds that it began selling products incorporating aspects of what the plaintiff characterizes as his proprietary technology as early as the 1970s. Def.'s Mot. at 6-7. Thus, while the plaintiff has specified matters such as the time, place, and content of the false misrepresentations, he has not specified what the opponent retained or the claimant lost as a consequence of the alleged fraud. *See* Pl.'s Brief; *see also*

15

Jenkins Aff.; Pl.'s Supp., Ex. 1-4; *Bombardier Corp.*, 286 F.3d at 551-52; *Cannon*, 642 F.2d at 1385. In order to enable the defendant to effectively respond, *Bower*, 639 F. Supp. at 538, the plaintiff must specify which technology the defendant inappropriately converted and in which of the defendant's products this technology was used. As the plaintiff has not had an opportunity to cure this deficiency, it would be premature to dismiss his fraud claim prior to granting him an opportunity to amend and supplement it. *See Firestone*, 76 F.3d at 1209. Therefore, the court grants the plaintiff leave to amend the fraud pleading to cure its deficiencies.

Having disposed of the fraud claim, the court can now resolve the question of the viability of the plaintiff's other claim: breach of implied contract.

### 4.   The Breach-of-Implied-Contract Claim is Barred by the Statute of Limitations

In the District of Columbia, a plaintiff must bring an action on contract claims within three years. D.C. Code § 12-301(7). This statute of limitations period begins to run when a claim accrues, which occurs "when its elements are present." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (internal citations omitted). For an implied contract the statute of limitations period runs from "the time of the breach . . . the time services are performed, rendered, and received," in other words, when the defendant has received "unjust enrichment" from the plaintiff. 54 C.J.S. *Limitations of Actions* § 180(a); *Thompsen*, 878 A.2d at 1222. The District of Columbia Court of Appeals has held that "unjust enrichment[6] occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Thompsen*, 878 A.2d

---

[6]   While the *pro se* plaintiff does not use the legal terminology of "unjust enrichment" in his complaint, it is apparent that the plaintiff intends to recover under this common law cause of action for breach of implied contract.

at 1222 (internal citations omitted).

To determine when unjust enrichment occurs, it is "inappropriate to look at [the plaintiff's] expectations of payment, rather than at the services he provided [to the defendant]." *Id.* at 1224. Therefore, "the statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld." *Id.* at 1219; *see also Zic v. Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 476 (N.D. Ill. 2001) (finding that unjust enrichment "accrues upon presentment and subsequent rejection of a bill for services, or as soon as the services were rendered"); *see also Baer v. Chase*, 392 F.3d 609 (3rd Cir. 2004) (adopting the "last rendition of services" test).

The defendant argues that the plaintiff's breach-of-contract claim is barred because the unjust enrichment "occurred, if at all, at the moment Woodstream received a benefit from McQueen without compensating him for its value." Def.'s Mot. at 8. The last time the parties discussed the plaintiff's product – in other words, the last time the defendant could have received a benefit from the plaintiff – was in 1992 when the plaintiff's representative provided the requested prototypes to the defendant. Am. Compl. ¶ 8.[7] Therefore, the defendant argues, by the time the plaintiff had brought his original complaint on October 22, 2005, the three-year statute of limitations had long lapsed.

In opposition, the plaintiff asserts again that the discovery rule has tolled the statute of limitations. Pl.'s Opp'n at 5; FED. R. CIV. P. 15. However, the discovery rule, which tolls the statute of limitations until the plaintiff learns of or should have learned of the violation of legal

---

[7] Pursuant to its decision to avoid treating the motion to dismiss as a summary judgment motion, the court considers only that evidence in the pleadings.

right, does not apply to unjust enrichment cases. *Thompsen*, 878 A.2d at 1225.

Similarly, the rules governing dates of amended complaints cannot save the plaintiff's claim. Because the clock began to run in 1992 upon the presentation of the plaintiff's product to the defendant, this claim expired well before the last millennium – over ten years ago in 1995.

## IV.   CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the breach-of-contract claim and grants the defendant's motion for a more definite statement. The plaintiff shall amend his complaint to supplement, to the specifications directed above, his claim of fraudulent misrepresentation. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of August, 2007.

RICARDO M. URBINA
United States District Judge