**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ROBERT MCQUEEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-2068 (RMU) |
| | : | | |
| v. | : | | |
| | : | Document Nos.: | 28, 30 |
| WOODSTREAM CORPORATION, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING THE DEFENDANT'S RENEWED MOTION TO DISMISS;**
**GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO LATE FILE DEFINITE STATEMENT**

**I.  INTRODUCTION**

Today the court considers whether the *pro se* plaintiff, Robert McQueen, has, with the

particularity necessary to survive a motion to dismiss in accordance with Federal Rule of Civil

Procedure 9(b), adequately pleaded fraudulent misrepresentation against the defendant,

Woodstream Corporation.  In its last order, the court concluded that the plaintiff had not, but

afforded him an opportunity to cure this deficiency by specifying what technology the defendant

allegedly misappropriated and which of the defendant's commercial products allegedly

incorporate his technology.  In its renewed motion to dismiss, the defendant fatally faults the

plaintiff for, first, failing to file a timely amendment to his complaint, and, second, for again

failing to specify the technology that the defendant allegedly misappropriated and the products

that exhibit it.  As to the first grievance, while the untimeliness of the plaintiff's amendment is

inexcusable, it is not – considering the lenity owed to *pro se* plaintiffs – inherently fatal to his

case.  The court, therefore, grants the plaintiff's motion to late file his definite statement.  As to

the second, the court concludes that the defendant's amended complaint does, even if just barely,

overleap the hurdle of Rule 9(b).  The court, therefore, denies the defendant's renewed motion to dismiss.

## II.  BACKGROUND

### A.  Factual History

The *pro se* plaintiff is the majority owner and President of Robin Services, Inc., a corporation based in Washington, D.C. that develops and markets products for catching insects and pests.  Pl.'s Brief on Venue ("Pl.'s Brief"), Ex. 3 ("Jenkins Aff.").  The defendant, Woodstream Corporation, is a pest control company based in Lititz, Pennsylvania.  *Id.* at 2.

Shortly before January 21, 1992, employees for the defendant initiated a series of contacts with the plaintiff's company to pursue a potential joint business venture.  *Id.* at 1-2.  First, an employee of the defendant's holding company called the plaintiff's representative in his Washington, D.C. office to discuss potential business opportunities between the defendant and the plaintiff's company.  *Id.*  Soon after, a Woodstream vice president called the plaintiff's representative, again at his Washington, D.C. office, to discuss the plaintiff's product and to invite the representative to Woodstream's Pennsylvania office for a demonstration.  *Id.* at 2.  On January 21, 1992, and again on February 14, 1992, the vice president sent follow-up letters to the plaintiff's representative at his Washington, D.C. office to confirm various aspects of the ongoing negotiations.  Pl.'s Brief, Ex. 1 & 2.  In furtherance of this potential venture – and at the invitation of the defendant – a representative of the plaintiff's company traveled to the defendant's Pennsylvania office to demonstrate the plaintiff's product.  *Id.* at 2.  The representative later sent samples of the product to the office for evaluation.  *Id.*

Communications between the parties came to an end later that year, after the defendant

repeatedly informed the plaintiff that no decision had been made and that it was still assessing

the product. Am. Compl. ¶ 10. That product, as described by the plaintiff, is "an enclosed,

harborage trap, with disposable glue panels, to catch small crawling insects and mice." *Id.* ¶ 7.

The plaintiff allegedly learned that the defendant was selling a product that incorporated the

plaintiff's technology "sometime in 2003" when reading an advertisement in the August 2003

edition of *Pest Control Technology* magazine. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s

Opp'n") at 3; Pl.'s Supp. Statement in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Supp."), Ex. 4.

### B.  Procedural History

On October 21, 2005, the plaintiff filed a complaint alleging that the defendant

misappropriated his technology.[1] Compl. ¶¶ 12-14. On November 16, 2006, the plaintiff filed an

amended complaint that abandoned his allegations of patent infringement and added common

law causes of action for fraudulent misrepresentation and breach of implied contract. Am.

Compl. ¶¶ 13-16. The defendant filed a motion to dismiss arguing, *inter alia*, that the applicable

statutes of limitations bar the plaintiff's claims. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 6-7.

The defendant also moved for a more definite statement with respect to "certain portions of the

amended complaint that are ambiguous or unclear." *Id.* at 13.

On August 10, 2007, the court issued a memorandum opinion and order resolving the

motion. Mem. Op. (Aug. 10, 2007). The court held that the plaintiff's fraudulent

misrepresentation claim was not barred by the statute of limitations. *Id*. at 8. Additionally, the

---

[1]    The plaintiff asserts that he held U.S. Patent Nos. 4,709,503 and 4,815,231 for this technology.
Am. Compl. ¶¶ 5,6.

court determined that because the defendant failed to explain why the plaintiff's discovery of the

alleged misappropriation occurred past the deadline of a reasonable inquiry, the fraud claim

related back to the date of the original complaint.[2]  *Id*. at 8-11.  Finally, while the court granted

the defendant's motion for a more definite statement – providing the plaintiff leave to amend his

fraud claim to cure its deficiencies and meet the heightened pleading standards of Rule 9(b), *id.*

at 15 – the court dismissed the plaintiff's breach of contract claim as barred by the statute of

limitations.  *Id*. at 18.

On December 14, 2007, over four months after the court's order granting the plaintiff

leave to amend, the defendant filed a renewed motion to dismiss the plaintiff's fraud claim for

failure to comply with the court's order.  Def.'s Renewed Mot. to Dismiss ¶¶ 5-6.  The defendant

observed that the plaintiff failed to file his more definite statement within 10 days of the court's

order, as required by Federal Rule of Civil Procedure 12(e).  *Id.* ¶ 4.  On December 20, 2006, the

plaintiff filed an opposition, requesting leave to file as late a more definite statement.  Pl.'s

Opp'n at 1, Ex. 1.  The plaintiff claims that he was unable to meet the requirements of the court's

order because as a *pro se* litigant he did not know how to proceed and could not obtain the

assistance of an attorney.  *Id*.  The plaintiff attached his more definite statement to the motion.

*Id.*, Ex. 1.  Eight days later, the defendant submitted a reply and response to the plaintiff's more

definite statement.  The defendant argues that the plaintiff should be precluded from relying on

---

[2]    The court noted that the defendant may reassert this claim if through discovery it unearths
      evidence to support the proposition.  Mem. Op. at n.5 (Aug. 10, 2007).

his *pro se* status as an excuse for failing to comply with the federal rules.[3]  Def.'s Reply ¶ 1.

Alternatively, the defendant maintains that the plaintiff's more definite statement "merely

restates (often verbatim) what his existing amended complaint already alleges."  Def.'s Reply ¶¶

2-3.  On January 4, 2008, the plaintiff filed an amended more definite statement including a

description of the alleged technology misappropriated by the defendant and a list of the

defendant's products incorporating this technology.  Pl.'s Am. Statement at 1.  On January 11,

2008, the defendant filed its response, renewing its request to dismiss the fraud claim.  Def.'s

Response ¶ 2.

## III.  ANALYSIS

### A.  Legal Standard for a Rule 9(b) Motion to Dismiss

Rule 9(b) requires that a pleader state with particularity the circumstances constituting

fraud or mistake.  FED. R. CIV. P. 9(b).  Rule 9(b)'s particularity requirement ensures that the

opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is

unsubstantiated, and protects him against a strike suit brought solely for its settlement value.

*Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992); *see also Kowal v.*

*M.C.I. Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (observing that Rule 9(b) aims

---

[3]     The defendant notes that on August 30, 2006, the court directed the parties to follow the
       Standing Order for civil cases and in its January 11, 2007 Minute Order, the court stated that
       "failure to follow the court's Standing Order will result in sanctions."  Def.'s Reply at 2 n.1.  The
       court finds the plaintiff's excuses wholly unsatisfactory, given that even *pro se* plaintiffs must
       abide by the legal rules and practices that ensure prompt, fair, and proper litigation.  *Jarrell v.*
       *Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Because courts are reluctant to dismiss before
       reaching the merits, the court will let the plaintiff off with a warning but also a promise that it
       will not tolerate any future violations, regardless of the legal difficulties the plaintiff faces by
       choosing to proceed *pro se*.  *Qawiy v. Nat'l R.R. Passenger Corp.*, 2006 WL 3377985, at 2
       (D.D.C. Nov. 1, 2006) (advising that the dismissal of a lawsuit never heard on its merits is a
       drastic step, normally to be taken only after unfruitful resort to lesser sanctions).

to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted));

*Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (recognizing that

Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged

fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)

(same).

Because the rule is chiefly concerned with the elements of fraud, the circumstances that

the claimant must plead with particularity include matters such as the time, place and content of

the false misrepresentations; the misrepresented fact; and what the opponent retained or the

claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier

Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d

1373, 1385 (D.C. Cir. 1981). In other words, Rule 9(b) requires that the pleader provide the

"who, what, when, where, and how" with respect to the circumstances of the fraud. *DiLeo v.

Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd*, 498 U.S. 941 (1990) (requiring

the pleader to provide the equivalent of a "first paragraph of any newspaper story"). Following

the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information

and belief, but must include an allegation that the necessary information lies within the

opponent's control, accompanied by a statement of the facts on which the pleader bases his

claim. *Kowal*, 16 F.3d at 1279 n.3.

That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general

requirements that a pleading contain a short and plain statement of the claim, and that each

averment be simple, concise and direct. *Id.* at 1278 (citing *Cannon*, 642 F.2d at 1385); FED. R.

CIV. P. 8. Rule 9(b) simply requires the pleader to provide a higher degree of notice by

adequately alleging all of the requisite elements for the cause of action invoked. *Alicke v. M.C.I. Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). Additionally, while the court must accept as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. *Kowal*, 16 F.3d at 1278 (citing *Wool v. Tandem*, 818 F.2d 1433, 1439 (9th Cir. 1987)); *Shields*, 1992 WL 88004, at *7; *see also One-O-One Enters., Inc. v. Caruso*, 668 F. Supp. 693, 697-99 (D.D.C. 1987), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988) (explaining that the pleader must allege with particularity the alleged fraud to survive a Rule 9(b) motion).

To comply with the requirements of Rule 9(b), a plaintiff does not need to "recite the evidence or plead detailed evidentiary matters." *Gabbert v. Penncorp. Fin., Inc.*, 1994 WL 675192, at *1 (D. Kan. Nov. 21, 1994) (quoting *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 603 F. Supp. 370, 374 (S.D.N.Y. 1985)). "Despite these stringent requirements, the courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992) (citing *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983)).

**B. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Fraud Claim**

In its order requiring a more definite statement, the court acknowledged that "the plaintiff has specified matters such as the time, place and content of the false misrepresentations." Mem. Op. at 9 (Aug. 10, 2007). According to the record, an employee representing the defendant's

holding company initiated discussions with the plaintiff regarding a potential joint business

venture.  Pl.'s Brief at 1-2.  The defendant's Vice President, Pest Control Division, J. Hibbard

Robertson, arranged to have the plaintiff's representative, Leroy T. Jenkins, Jr., visit the

defendant's manufacturing plaint in Pennsylvania and present samples of the plaintiff's

technology.  *Id*. at 3; Pl.'s Supp., Ex. 1-2.  On February 14, 1992, the plaintiff, through his

representative, disclosed samples of the technology requested by the defendant for its assessment.

Pl.'s Am. Comp. at 8; Pl.'s Supp., Ex. 3; Pl.'s Brief., Ex. 3 ("Jenkins Aff.").  Subsequent

negotiations failed because the defendant continuously refused to accede to a licensing

agreement.  *Id*. at 10-12.  And, years later, after identifying the defendant's product in a pest

control trade journal, the plaintiff filed suit alleging that it "incorporated all or most of the

technology he had disclosed to [Woodstream]."  *Id*. at 11; Pl.'s Supp. Statement in Opp., Ex. 4;

Pl.'s Brief, Ex. 3.  As the court held, these facts state with sufficient particularity the time, place,

and content of the allegedly false misrepresentations.  Mem. Op. at 9.

      Nevertheless, in alleging fraud the plaintiff must provide more than conclusory

statements that the defendant's actions were fraudulent and deceptive.  *Burman v. Phoenix*

*Worldwide Indus.*, 384 F. Supp. 2d 316, 325 (D.D.C. 2005) (citing *Shekoyan v. Sibley Int'l*

*Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002)) (concluding that the plaintiff satisfied Rule 9(b)'s

pleading requirements with concrete averments of facts).  Rather, the plaintiff must plead the

facts with particularity, so as to place the defendant on notice of his claims.  *D'Ambrosio v.*

*Colonnade Council of Unit Owners*, 717 A.2d 356, 361 (D.C. 1998) (concluding that concise but

particularized averments satisfied pleading requirements for fraud claim); *DiLeo*, 901 F.2d at 627

(requiring the plaintiff to provide the "who, what, when, where, and how" with respect to the circumstances of fraud).

Thus, in order to enable the defendant to effectively respond to the plaintiff's allegation of injury, the court ordered the plaintiff to supplement his pleadings with a description of the technology the defendant inappropriately converted and in which of the defendant's products this technology was used.  Mem. Op. at 16 (Aug. 10, 2007).  In his supplemental filing, the plaintiff states that the "technology is a fully enclosed permanent glue trap with disposable glue panels for crawling pests and mice."  Pl.'s Am. Statement at 1.  The plaintiff then lists four of the defendant's products that allegedly incorporate this technology.  *Id*.  The defendant argues that the plaintiff's description of his technology remains unacceptably vague and general.  Def.'s Response ¶ 2.[4]

The court disagrees.  The plaintiff's description is undoubtedly simple, but so is the pest-catching device itself.  Moreover, the court's scrutiny cannot be overly exacting here, as the plaintiff is proceeding *pro se*.  *See Shekoyan*, 217 F. Supp. 2d at 64 (holding *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers") (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).  Reading the complaint "liberally and broadly," the court cannot conclude that "it appears beyond doubt that the plaintiff can 'prove no set of facts in support of his claim that would entitle him to relief.'"  *Id.*; *Price v. Phoenix Home Life Ins.*, Co., 44 F. Supp. 2d 28, 31 (D.D.C. 1999).  In any event, the plaintiff has now fully apprised the defendant of the exact products that allegedly incorporate his technology.  Pl.'s Am. Statement at 1.  By

---

[4]     The defendant does not take issue with the plaintiff's identification of the Woodstream products allegedly integrating his technology.

supplementing his pleadings with a description of the technology allegedly misappropriated by

the defendant and listing the defendant's products that incorporate this technology, the plaintiff

has particularly stated the facts and circumstances of his fraud claim.

Furthermore, one cannot forget that Rule 9(b) is not meant to supplant discovery.

*Gabbert*, 1994 WL 675192, at *1 (citing *Markovich v. Vasad Corp.*, 617 F. Supp. 142, 147 (E.D.

Pa. 1985)).  Contested issues of fact warranting discovery exist on the record regarding when the

defendant first incorporated such technology into its products.[5]  The plaintiff maintains that when

the defendant appropriated his technology "no other products on the market at that time used this

technology."  Am. Compl. at 7.  However, the defendant contends that it has been selling

"enclosed traps with disposable glue boards for more than thirty years (as has [sic] others), long

before the alleged fraudulent misrepresentation."  Def.'s Resp. ¶ 3.  The defendant's request for

greater precision as to what it "learned" from the allegedly misappropriated technology, *id*. at 3

n.1, is an issue to be resolved on the merits after reasonable discovery.  The appropriate timing

for the defendant to challenge the factual sufficiency of the plaintiff's complaint is not now but

later, on summary judgment following discovery.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24

(1986).  Rule 9(b) is a net designed to catch intrinsically faulty claims, not a trap designed to

ensnare claims that merely lack a Zolaesque rigor of detail.

---

[5]    This court already recognized that discovery may be appropriate, by affording the defendant a renewed opportunity to reassert his claim that the plaintiff's fraud claim is statutorily barred under the discovery rule if additional information surfaces.  Mem. Op. at 11 n.5 (Aug. 10, 2007).

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's renewed motion to dismiss the fraud claim and grants the plaintiff's motion for leave to late file definite statement.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of March, 2008.

RICARDO M. URBINA
United States District Judge
