# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT MCQUEEN,                          :
                                         :
                Plaintiff,             :     Civil Action No.:     05-2068 (RMU)
                                         :
                v.                     :     Re Document No.:      50
                                         :
WOODSTREAM CORPORATION,                  :
                                         :
                Defendant.             :

## <u>MEMORANDUM OPINION</u>

### GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR
### LACK OF SUBJECT MATTER JURISDICTION

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss the plaintiff's

fraudulent misrepresentation claim for lack of subject matter jurisdiction. The defendant asserts

that the plaintiff cannot recover sufficient damages to satisfy the amount-in-controversy

requirement to maintain this diversity action. The court concludes that the plaintiff's

compensatory damages are limited to what he specifically gave up in reliance on the defendant's

alleged misrepresentations, termed his "out-of-pocket" damages. The plaintiff has made no

specific allegations with respect to such damages, instead focusing on damages he cannot recover

under District of Columbia law. The plaintiff has also asserted a right to punitive damages.

Because the plaintiff cannot recover a sufficient combination of compensatory and punitive

damages to satisfy the amount-in-controversy requirement, the court grants the defendant's

motion to dismiss.

## II.  FACTUAL & PROCEDURAL BACKGROUND

As the facts giving rise to the plaintiff's claims have been set forth in prior opinions, the court will not restate them in exhaustive detail here.  *See* Mem. Op. (Mar. 10, 2008); Mem. Op. (Aug. 10, 2007).  The plaintiff holds patents to technology used in insect and mouse traps.  *See* Am. Compl. ¶¶ 5-6.  In 1992, the defendant requested samples of the plaintiff's patented technology so that it could determine whether it wished to pursue a joint business venture with the plaintiff. *Id.* ¶ 8.  The plaintiff sent the requested samples to the defendant, but negotiations between the plaintiff and the defendant soon broke down.  *Id.* ¶¶ 8-10.  The only subsequent contact between the parties consisted of the defendant repeatedly informing the plaintiff that no decision had been made with respect to the prospect of a joint business venture and that it was still assessing the technology for possible licensing and/or future development with the plaintiff. *Id.* ¶ 10.  In 2003, after discovering that one of the defendant's products "incorporated all or most of the technology" that the plaintiff had disclosed to the defendant, the plaintiff commenced the instant suit.  *Id.* ¶ 11.

The court has resolved several motions, including a motion to dismiss the plaintiff's breach of contract claim, which the court granted.  *See* Mem. Op. (Mar. 10, 2008); Mem. Op. (Aug. 10, 2007).  The only cause of action now remaining is the plaintiff's fraudulent misrepresentation claim.  *See* Mem. Op. (Aug. 10, 2007).  The defendant moves to dismiss that claim for lack of subject matter jurisdiction, alleging that the plaintiff cannot meet the amount-in-controversy requirement.  *See generally* Def.'s Mot.  The court turns now to the applicable legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen.

Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a

court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory

requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal

court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins.

Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion

to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the

burden of establishing by a preponderance of the evidence that the court has subject matter

jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim,

however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of

Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the court is

not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227,

241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  When necessary, the court

may consider the complaint supplemented by undisputed facts evidenced in the record, or the

3

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.  Legal Standard for Diversity Jurisdiction

A federal district court has subject matter jurisdiction over a suit when the amount in

controversy exceeds $75,000 and the parties are diverse in citizenship.  28 U.S.C. § 1332(a);

*DeBerry v. First Gov't Mortgage & Investors Corp.*, 170 F.3d 1105, 1106 n.1 (D.C. Cir. 1999);

*see also Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998) (per curiam) (identifying the

$75,000 amount-in-controversy requirement for federal diversity jurisdiction under 28 U.S.C. §

1332(a)).  The amount in controversy is established at the commencement of the action.  28

U.S.C. § 1335(a).  Subsequent events reducing the amount in controversy will not divest the

court of its jurisdiction.  *St. Paul*, 303 U.S. at 289-90.  If it becomes apparent during the course

of litigation that from the outset the maximum conceivable amount in controversy was less than

the jurisdictional minimum, the court must dismiss the case for lack of subject matter

jurisdiction.  *Watson v. Blankinship*, 20 F.3d 383, 387-88 (10th Cir. 1994); *Jones v. Knox

Exploration Corp.*, 2 F.3d 181, 182-83 (6th Cir. 1993).  Where the plaintiff has alleged a sum

certain that exceeds the requisite amount in controversy, that amount controls if made in good

faith.  *St. Paul*, 303 U.S. at 289-90.  Additionally, to justify dismissal, it must appear to a legal

certainty that the claim is for less than the jurisdictional amount.  *Id.* at 288-89; *Hartigh v. Latin*,

485 F.2d 1068, 1071 (D.C. Cir. 1973) (citing *Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir.

1973)).

Punitive damages are properly considered as part of the amount in controversy.  *Hartigh*,

485 F.2d at 1072 (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943)).  In

considering punitive damages to satisfy the jurisdictional minimum in a diversity case, the court

must conduct a two-part inquiry.  *Bell*, 320 U.S. at 240; *Cadek v. Great Lakes Dragaway, Inc.*,

58 F.3d 1209, 1211-12 (7th Cir. 1995).  First, the court must determine whether the plaintiff can

recover punitive damages as a matter of governing substantive law.  *Bell*, 320 U.S. at 240.  If so,

the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff

would under no circumstances be entitled to recover the jurisdictional amount.  *Cadek*, 58 F.3d at

1212.  In this second step, the plaintiff must present some factual evidence of entitlement to

punitive damages.  *Larkin v. Brown*, 41 F.3d 387, 388-89 (8th Cir. 1994) (citing *Esler v.*

*Northrop Corp.*, 86 F.R.D. 20, 28 (W.D. Mo. 1979) (recognizing that "when the plaintiff's

allegation of the amount in controversy is challenged . . . existence of the required amount must

be supported by competent proof") (citing *Hulsenbusch v. Davidson Rubber Co.*, 344 F.2d 730,

733 (8th Cir. 1965))).

### C.  The Court Grants the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

### 1.  The "Out-of-Pocket" Damages Measure Governs the Plaintiff's Claim for Compensatory Damages

In support of its motion, the defendant asserts that the "out-of-pocket" damages measure

governs the plaintiff's fraudulent misrepresentation claim under District of Columbia law.[1]

Def.'s Mot. at 6-9.  Using this calculation method, the defendant argues that the plaintiff cannot

---

[1]     As the Circuit has explained, "in a diversity case, the substantive tort law of the District of
Columbia controls . . . .  [The court's] duty, then, is to achieve the same outcome [it] believe[s]
would result if the District of Columbia Court of Appeals considered this case." *Novak v.*
*Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (citations and quotation marks
omitted).

recover more than fifteen dollars in compensatory damages, representing the cost of producing

twelve traps and shipping them to the defendant.  *See id.* at 9.

The plaintiff disagrees.  *See* Pl.'s Opp'n at 9.  He contends that all of the cases the

defendant cites in reference to the "out-of-pocket" measure are inapposite because they involved

claims of fraudulent inducement to contract for real property.  *Id.* at 10.  In this case, the plaintiff

maintains, the appropriate method of calculating damages is unclear under District of Columbia

law, and therefore the plaintiff urges the court to adopt the measure of damages set forth in the

Restatement (Second) of Torts.  *Id.* at 9-12.  Based on the approach described in the Restatement,

the plaintiff claims he is entitled to the "benefit of the bargain."  *Id.*

The District of Columbia Court of Appeals has "explicitly recognized [the 'out-of-

pocket' damages measure] as the norm" in fraudulent misrepresentation cases.  *Dresser v.

Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 840 n.18 (D.C. 1983); *see also Horning v.

Ferguson*, 52 A.2d 116, 119 (D.C. 1947) (reversing the trial court's award of "loss of the

bargain" damages and holding that the plaintiff was entitled to recover only for the "direct

consequences of the false representations").  The "out-of-pocket" measure is subject to exception

only "in rare cases where necessary to effect justice."  *Dresser*, 465 A.2d at 840 n.18.  The

exception is so rare, in fact, that the court is aware of only two cases – each of which predated the

pronouncement by the District of Columbia Court of Appeals in *Dresser* – in which the Court of

Appeals has deviated from the "out-of-pocket" measure with respect to a fraudulent

misrepresentation claim.[2]  *See Dravillas v. Vega*, 294 A.2d 363 (D.C. 1972);[3]  *Spargnapani v. Wright*, 110 A.2d 82 (D.C. 1954).[4]

The plaintiff offers no support for his proposition that the "out-of-pocket" rule applies only to a narrow class of fraudulent misrepresentation cases.  *See* Pl.'s Opp'n at 10.  Instead, he notes the absence of authority expressly rejecting the "benefit-of-the-bargain" measure.  *Id.* at 9. While the plaintiff is correct that the District of Columbia Court of Appeals has not categorically precluded application of the "benefit-of-the-bargain" measure in fraudulent misrepresentation

---

[2]     The D.C. Circuit, applying District of Columbia law, has also deviated from the "out-of-pocket" measure in one instance.  *See Espaillat v. Berlitz Schools of Languages of Am.*, 383 F.2d 220, 223 (D.C. Cir. 1967) (refusing to apply the out-of-pocket or the benefit-of-the-bargain measure because neither would provide an "apt gauge of recovery").

[3]     In *Dravillas v. Vega*, the defendant, a landlord, was accused of misrepresenting whether his property could be used as a beauty salon.  294 A.2d 363, 364 (D.C. 1972).  When the plaintiff, the tenant, was unable to operate a salon on the property, the trial court awarded damages for her loss of revenue.  *Id.* at 365.  The District of Columbia Court of Appeals concluded that the trial court had not erred because "the evidence was sufficient to permit a reasonable estimate" of damages pursuant to the "benefit-of-the-bargain" measure.  *Id.*  By endorsing the "benefit-of-the-bargain" measure with respect to the plaintiff's fraudulent misrepresentation claim, the *Dravillas* court departed, without explanation, from the standard measure of damages applicable to such claims.  *See Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 840 n.18 (D.C. 1983).  *Dravillas*, therefore, provides no support for applying the "benefit-of-the-bargain" measure in this case.

[4]     *Spargnapani v. Wright* likewise fails to bolster the plaintiff's argument that the court should apply the "benefit-of-the-bargain" measure of damages.  *See generally* 110 A.2d 82 (D.C. 1954). In *Spargnapani*, the District of Columbia Court of Appeals deviated from the "out-of-pocket" measure for the purpose of expediency.  *Id.* at 85.  The defendant was accused of misrepresenting the quality of a home heating system.  *Id.*  Rather than calculate the "difference between the price paid for the house itself and its depreciated market value resulting from the discovered defect" – the "out-of-pocket" measure – the court elected to take the "direct and simple approach" by "award[ing] damages on the basis of the actual cost of replacing the defective boiler."  *Id.* Because there is no indication that applying the "benefit-of-the-bargain" measure in this case would be more expedient than applying the "out-of-pocket" measure, *Spargnapani* weighs in favor of applying the "out-of-pocket" measure here.

cases, it has specified that courts should deviate from the "out-of-pocket" measure only when necessary to effect justice.  *See Dresser*, 465 A.2d at 840 n.18.

Accordingly, the court turns to the question of whether deviating from the "out-of-pocket" measure is necessary to effect justice in this case.  As the defendant points out, other causes of action may have permitted the plaintiff to recover damages beyond his "out-of-pocket" losses.  *See* Def.'s Mot. at 11.  Yet, with the exception of his breach of contract claim, which the court dismissed as time-barred, the plaintiff has not asserted any other causes of action.  *See generally* Am. Compl.; Mem. Op. (Aug. 10, 2007).  The court does not consider it "necessary to effect justice" to permit the plaintiff to recover under a measure of damages corresponding to a cause of action that the plaintiff failed to assert.  *Cf. United States v. Gen. Motors Corp.*, 323 U.S. 373, 379-80 (1945) (holding that victims of government takings are entitled to compensatory damages, but not consequential damages); *Greenwich Ins. Co. v. ICE Contractors, Inc.*, 541 F. Supp. 2d 327, 334 (D.D.C. 2008) (stating that punitive damages are unrecoverable in a breach of contract claim, even if the breach is willful, wanton or malicious).  Consequently, there is no justification for deviating from the "out-of-pocket" measure of damages in this case.

**2.  The Plaintiff Has Adequately Stated a Claim for Punitive Damages**

In determining the jurisdictional amount in controversy, the court must consider the plaintiff's claim for punitive damages in addition to his claim for compensatory damages.  *See Kahal v. J.W. Wilson & Assocs., Inc.*, 673 F.2d 547, 548 (D.C. Cir. 1982).  The defendant contends that the plaintiff failed to allege that the defendant acted with a state of mind that would support a recovery of punitive damages.  *See* Def.'s Mot. at 11.  In response, the plaintiff suggests that evidence of the defendant's true intention will entitle him to punitive damages.  *See*

8

Pl.'s Opp'n at 4.  The plaintiff anticipates obtaining such evidence through depositions of the

defendant's former and current employees, but he has not been able to obtain such discovery.[5]

*See id.* at 14.

Under District of Columbia law, recovery of punitive damages is permissible so long as

"it is shown by clear and convincing evidence that the tort committed by the defendant was

aggravated by egregious conduct and a state of mind that justifies punitive damages."  *Chatman*

*v. Lawlor*, 831 A.2d 395, 400 (D.C. 2003).  The plaintiff alleges that the defendant

misrepresented its intention to obtain samples of the plaintiff's technology for possible licensing,

and that the defendant's true intention was to convert the technology for its own use and benefit.

*See* Am. Compl. ¶ 14.  Given this allegation, and given that discovery – which the plaintiff

maintains will yield evidence of the defendant's true intention – is not yet complete, the court

cannot conclude that the plaintiff will be unable to recover punitive damages.

### 3.  The Plaintiff Fails to Satisfy the Amount-in-Controversy Requirement

The defendant next argues, based on its estimation of the plaintiff's compensatory

damages, that an award of punitive damages sufficient to satisfy the amount-in-controversy

requirement would violate the defendant's due process rights.  *See* Def.'s Mot. at 12-13.  The

plaintiff responds that there is no "simple mathematical formula" for determining whether an

award of punitive damages violates due process, and he contends that a recovery of punitive

damages can, by itself, satisfy the amount-in-controversy requirement.  *See* Pl.'s Opp'n at 13-14.

---

[5]     On the parties' joint motion, the court stayed discovery pending resolution of the instant motion. *See* Minute Order (July 17, 2009).

9

The plaintiff is correct that the Supreme Court has been "reluctant to identify concrete constitutional limits on the ratio between harm . . . to the plaintiff and the punitive damages award." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424-25 (2003). Nevertheless, the Court has observed that "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *Id.* at 425. The D.C. Circuit has not ruled on whether punitive damages alone may satisfy the amount-in-controversy requirement or whether such an award would violate due process.[6] But courts in this circuit have adhered to the Supreme Court's observation regarding the permissible ratio between compensatory and punitive damages. *See Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 261 (D.D.C. 2005) (holding that the plaintiff could not meet the amount-in-controversy requirement based on a 13 to 1 ratio of punitive to compensatory damages); *Thomas v. Nat'l Legal Prof'l Assoc.*, 594 F. Supp. 2d 31, 34 (D.D.C. 2009) (holding that the plaintiff could meet the amount-in-controversy requirement based on a 6.5 to 1 ratio of punitive to compensatory damages). Mindful of this admonition, the court turns to whether the plaintiff's allegations, if true, would support a recovery sufficient to satisfy the amount-in-controversy requirement.

The court lacks subject matter jurisdiction if it is "highly improbable that the amount in controversy could exceed the jurisdictional threshold, and when the plaintiff submits no evidence to the contrary." *Hunter*, 384 F. Supp. 2d at 260 (citing *Rosenboro v. Kim*, 994 F.2d 13, 18 (D.C.

---

[6]     There has been limited treatment of this issue in other circuits. The Second Circuit, for example, affirmed a trial court's holding that the plaintiff's punitive damages alone sufficed to meet the amount-in-controversy requirement. *See Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). By contrast, the Seventh Circuit has held that a plaintiff did not meet the jurisdictional threshold because the ratio of compensatory to punitive damages would have had to be more than 180 to 1 to satisfy the amount-in-controversy requirement. *See Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978-80 (7th Cir. 2000).

Cir. 1993)).  In this case, the only specific claim for damages the plaintiff has made is "the loss of

the profits [the defendant] has gained through its conversion of [the plaintiff's] technology," *see*

Am. Compl. ¶ 14, damages which are not recoverable under the "out-of-pocket" measure, *see*

*Dresser*, 465 A.2d at 840 n.18 (explaining that the "out-of-pocket" measure permits recovery

only for "the difference between the amount paid and the market value of the thing acquired"

(quoting *Kraft v. Lowe*, 77 A.2d 554, 558 (D.C. 1950))).  The plaintiff has not indicated that he

has suffered any loss based on the "out-of-pocket" measure of damages.  *See generally* Am.

Compl.; Pl.'s Opp'n.  Nor has the plaintiff refuted the defendant's assertion that the plaintiff's

"out-of-pocket" damages are limited to fifteen dollars, representing the cost of producing and

shipping twelve traps.  *See generally* Pl.'s Opp'n; *see also* Def.'s Mot at 9.

      Assuming, therefore, that the plaintiff's compensatory damages would be limited to

fifteen dollars, the ratio of punitive to compensatory damages necessary for the plaintiff to satisfy

the amount in controversy would be at least 5000 to 1.  And while the plaintiff has alleged that

the defendant acted willfully, Am. Compl. ¶ 14, his allegations fall far short of suggesting that he

would conceivably be entitled to such a high ratio of punitive to compensatory damages.  To the

contrary, the plaintiff has alleged a purely economic injury, he has not alleged that the defendant

showed a reckless disregard for the health or safety of others and he has not alleged that the

defendant's behavior took place on more than one occasion.  *Compare BMW of N. Am. v. Gore*,

517 U.S. 559, 576-77 (1996) (concluding that none of the aggravating factors for reprehensibility

were present because the plaintiff alleged a purely economic injury, the defendant's conduct did

not show a reckless disregard for the health or safety of others and the defendant did not persist

in its conduct after it was judged unlawful) *with* Am. Compl. ¶ 14 (alleging that the defendant

11

willfully made a fraudulent misrepresentation with the intent to convert the plaintiff's technology to its own use and benefit).  In sum, given that the plaintiff has failed to assert a plausible claim for at least $75,000 in compensatory and punitive damages, the court concludes that the plaintiff cannot satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332.  Therefore, the court dismisses the plaintiff's suit for lack of subject matter jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss for lack of subject matter jurisdiction.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 9th day of December, 2009.


RICARDO M. URBINA
United States District Judge